IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIELA PEREZ, *on behalf of herself and all others similarly situated,* | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:19-CV-724-RP |
| MCCREARY, VESELKA, BRAGG & ALLEN, P.C., and MVBA, LLC | § § § | |
| Defendants. | § § | |

**<u>ORDER</u>**

Before the Court are cross-motions for summary judgment filed by Plaintiff Mariela Perez ("Perez"), (Dkt. 73), and Defendants McCreary, Veselka, Bragg & Allen, P.C. ("MVBA PC") and MVBA, LLC (together, "Defendants"), (Dkt. 72). Also before the Court is Perez's motion to certify a class. (Dkt. 71). Having considered the parties' arguments, the evidence, and the relevant law, the Court issues the following order.

**I. BACKGROUND**

Perez brings claims under the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. §1692, *et seq.* Shortly after May 2, 2019, Perez received a letter stating that "MVBA has been retained to collect an outstanding debt due," with regards to a utility bill for $486.57 that was delinquent as of May 1, 2015. (Letter, Dkt. 67-1; *see* Pl. Mot. Summ. J., Dkt. 173, at 4). The letter was dated May 2, 2019. (Letter, Dkt. 67-1). The letter included a heading at the top that stated "MVBA LLC," and requested payment be mailed to "McCreary Veselka Bragg & Allen, L.L.C." and "MVBA" at the bottom of the letter. (*Id.*). The letter states that "[p]ayment in full . . . is required." (*Id.*). Because the debt was more than four years old, it was no longer legally enforceable under the Texas statute of limitations. TEX. CIV. PRAC. & REM. CODE §16.004(a)(3).

Perez's debt account was placed with MVBA LLC prior to May 2019. (Whigham Decl., Dkt. 72-1, at 1). MVBA LLC used a program to identify accounts that were delinquent for more than four years, after which they would be placed on "hold" and collection activity would not occur on those accounts. (*Id.* at 2). Despite this policy, the letter was printed and mailed to Perez on May 2, 2019. (*Id.*). Additionally, fifty-five similar letters were mailed to Texas residents more than four years after debt had been delinquent. (Defs.' Interrogatories, Dkt. 71-6, at 8).

MVBA PC is the sole owner of MVBA LLC. (Allen Depo., Dkt. 73-7, at 15:13-15). MVBA LLC works with consumer accounts subject to the FDPCA, whereas MVBA PC collects debts not subject to the FDCPA. (Whigham Decl., Dkt. 72-1, at 3; Allen Decl., Dkt. 72-2, at 2). Defendants argue that only MVBA LLC drafted and sent the letter to Perez, and MVBA PC "does not exercise any daily control or oversight over MVBA LLC and its letter processes." (Defs.' Mot. Summ. J., Dkt. 72, at 2) (citing Whigham Decl., Dkt. 72-1, at ¶¶ 17-18; Allen Decl., Dkt. 72-2, at ¶¶ 7-8).

Perez claims the letter is "false and misleading to the least sophisticated consumer because it failed to disclose a) that the alleged Debt was time barred debt and unenforceable, and b) that any partial payment could reinstate the applicable statute of limitations." (2d. Am. Compl., Dkt. 67, at 5); 15 U.S.C. §1692(e)(2)(A) and (10).[1] Perez also brings a claim under 15 U.S.C. §1692(f), which states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." (2d. Am. Compl., Dkt. 67, at 11).

---

[1] 15 U.S.C. §1692(e)(2)(A) and (10) state:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (2) The false representation of—
>     (A) the character, amount, or legal status of any debt;
> . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Perez and Defendants each seek summary judgment in their favor, and Perez moves for class certification. (Defs.' Mot. Summ. J., Dkt. 72; Pl.'s Mot. Summ. J., Dkt. 73; (Mot. Certify Class, Dkt. 71). The Court will consider each motion in turn.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party does not bear the ultimate burden of proof, after it has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, she must establish all the essential elements of her claim that warrant judgment in her favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment

<u>1. Standing</u>

Defendants first argue that Perez lacks standing because she was not injured. (Mot. Summ. J., Dkt. 72, at 3–4). To establish Article III standing, a plaintiff must demonstrate that she has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). For an injury in fact, a plaintiff must show that she suffered "'an invasion

of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Although the Supreme Court has not addressed standing under the FDCPA, it recently addressed standing under the Fair Credit Reporting Act ("FCRA") in *Spokeo, Inc. v. Robins*, observing that "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it. Article III standing requires a concrete injury even in the context of a statutory violation." 136 S. Ct. at 1543. The Fifth Circuit has since applied *Spokeo* to the FDCPA. *See Sayles v. Advanced Recovery Sys.*, 865 F.3d 246 (5th Cir. 2017). However, "the Fifth Circuit has not directly addressed whether a consumer bringing an FDCPA claim must establish actual damages to assert standing or recover damages, but it has recognized the FDCPA was intended to have a 'broad remedial scope.'" *Ghanta v. Immediate Credit Recovery, Inc.*, No. 3:16-CV-00573-O, 2017 WL 1423597, at *3 (N.D. Tex. Apr. 18, 2017) (quoting *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002)). Generally speaking, the "jurisprudence distinguishes between the provision of the FCRA at issue in *Spokeo*, which contains 'procedural requirements,' and the FDCPA, which creates 'substantive right[s].'" *Ngo v. NPAS, Inc.*, No. 20-566, 2021 U.S. Dist. LEXIS 8183 at*8, 2021 WL 149121, at *4 (E.D. La. Jan. 15, 2021) (citing *Guerrero v. GC Servs. Ltd. P'ship*, No. 15-7449, 2017 WL 1133358, at *10 (E.D.N.Y. Mar. 23, 2017) ("[T]he majority of post-*Spokeo* decisions which have analyzed standing within the context of the FDCPA have determined that, unlike the FCRA section at issue in *Spokeo*, which contains only procedural requirements, the FDCPA creates a substantive right, the violation of which would itself give rise to a concrete injury.")).

Perez has standing to bring her claims under 15 U.S.C. §1692(e)(2)(A) and (10). Perez argues that she has a concrete injury regarding her "right to receive the required disclosures in communications governed by the FDCPA" and because she was "'confused' by receiving false and

conflicting information." (Pl.'s Resp., Dkt. 79, at 8) (citing *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016); *Rodriguez v. Codilis & Associates, P.C.*, No. 17-CV-03656, 2018 WL 1565596, at *3 (N.D. Ill. Mar. 30, 2018)). Defendants respond that "the state of confusion is not itself an injury," and because Perez testified that she knew about the four-year statute of limitations of the debt, "she could not have been confused or harmed by the Letter." (Reply, Dkt. 81, at 2–3) (quoting *Tataru v. RGS Fin., Inc.*, No. 18-CV-6106, 2021 WL 1614517, at *3 (N.D. Ill. Apr. 26, 2021)). Assuming that the letter violates the FDCPA, then Perez's "alleged injury is that she received false, misleading, and deceptive debt collection communications, and that is precisely what the debt collection laws are, in part, intended to prevent." *Kranz v. Midland Credit Mgmt., Inc.*, No. SA-18-CV-169-XR, 2020 WL 3899223, at *5 (W.D. Tex. July 10, 2020) (citing *Guerrero*, 2017 WL 1133358, at *10; *Ghanta*, 2017 WL 1423597, at *4 ("In evaluating FDCPA claims post-*Spokeo*, courts have found that an alleged FDCPA violation is sufficient to confer standing because it establishes the consumer suffered the type of harm Congress intended to prevent—abusive debt collection practices.")). Additionally, even if Perez is required to show an injury in addition the FDCPA violation itself, familiarity with the FDCPA does not foreclose confusion from a misleading letter, similar to the "anxiety, and worry" that other courts have found to be sufficient for an injury regarding an FDCPA claim. *See Smith v. Moss L. Firm, P.C.*, No. 3:18-CV-2449-D, 2020 WL 584617, at *5 (N.D. Tex. Feb. 6, 2020) (collecting cases); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021) (discussing a

potential "emotional injury"); (*see also* Perez Depo., Dkt. 72-3, at 41:1-5) (Perez "thought for sure [the debt] would go on [her] credit"). Accordingly, Perez has standing to bring her claims.[2]

### 2. MVBA PC

Perez brings her claims against MVBA LLC and MVBA PC, seeking that they be held jointly and severally liable. (2d Am. Compl., Dkt. 67, at 12). Although MVBA LLC sent the letter to Perez, she argues that MVBA PC should be held liable under either a theory of alter ego, joint enterprise, or vicarious liability. (*Id.* at 7–8). For the reasons discussed below, none of Perez's proposed theories allow her to hold MVBA PC liable.

#### a. Alter Ego

First, Perez alleges that MVBA PC is an alter ego of MVBA LLC. (Pl.'s Resp., Dkt. 79, at 15). When a subsidiary company is "considered the 'alter ego,' 'agent,' or 'instrumentality' of the parent company . . . the district court, acting in its equitable capacity, is entitled to pierce the corporate veil." *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985). To determine whether the alter ego doctrine applies, courts consider "the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006). "There must be a 'plus factor, something beyond the subsidiary's mere presence within the bosom of the

---

[2] This outcome is unchanged by the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). (*See* Dkt. 83). There, certain class members were found to lack standing under the FCRA because misleading information in their internal credit files was never provided to credit agencies or even to the class members themselves. 141 S. Ct. 2190 at 2209–12 ("[P]laintiffs did not present any evidence that the 6,332 class members even knew that there were OFAC alerts in their internal TransUnion credit files."). Whereas here, Perez was mailed a letter with misleading information, and so were the proposed class members.

corporate family.'" *Licea v. Curacao Drydock Co.*, 627 F. App'x 343, 348 (5th Cir. 2015) (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007)).

MVBA PC is the sole owner of MVBA LLC, they both have the same registered agent, and they both operate out of the same business address. (Pl.'s Resp., Dkt. 79, at 16) (citing Allen Depo., Dkt. 73-7, at 23:2-10; 23:21-24:2). Perez further asserts that all of the employees and supervisors at MVBA LLC were also employees and supervisors at MVBA PPC. (*Id.*) (citing Allen Depo., Dkt. 73-7, at 16:8-17:25; Whigham Depo., Dkt. 73-8, at 23:19-25). Further, the director of operations of MVBA, LLC, Steve Whigham ("Whigham"), also oversaw the collections for MVBA, P.C. (*Id.*) (Allen Depo., Dkt. 73-7, at 30:22-31:11; Whigham Depo., Dkt. 73-8, at 10:8-12). And all revenues from MVBA LLC went to MVBA PC, who in turn paid all the salaries of MVBA LLC's employees. (*Id.* at 16–17) (citing Allen Depo., Dkt. 73-7, at 18:5-19, 21:6-19; Whigham Depo., Dkt. 73-8, at 16:13-25). Whigham also reported to the executive board of MVBA PC. (*See* Allen Depo., Dkt. 73-7, at 36:22-37:2).

Perez's evidence shows that MVBA PC and MVBA LLC substantially overlap—they are operated out of the same offices by the same people. However, Perez must also show that "the degree of control the parent exercises [is] greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Flores v. Bodden*, 488 F. App'x 770, 777 (5th Cir. 2012) (quoting *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002)); *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008) (to apply alter ego there must be "abuse . . . .injustice and inequity," and "the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like"). Perez alleges broadly that MVBA PC used MVBA LLC as its alter ego to "circumvent a statute," presumably the FDCPA,

but offers no evidence that MVBA PC used its subsidiary company in this way. (Pl.'s Resp., Dkt. 79, at 15, 18). Without any evidence of fraud, injustice, or abuse in the relationship between the two companies, the Court grants summary judgment to Defendants on the issue of whether MVBA PC can be held liable under the alter ego doctrine.

b. Joint Enterprise

Perez next argues that MVBA PC should be held liable as a joint enterprise. In Texas, the elements to establish joint enterprise are as follows: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Air Liquide Mexico S. de R.L. de C.V. v. Talleres Willie, Inc.*, No. CV H-14-211, 2015 WL 8763961, at *4 (S.D. Tex. Dec. 15, 2015) (citing *Shoemaker v. Whistler's Estate*, 513 S.W.2d 10, 14 (Tex. 1974)).

Defendants argue that Perez cannot show there was an agreement between MVBA PC and MVBA LLC for a common purpose to be carried out in collecting on consumer accounts, or a common pecuniary interest in directing the collection of consumer accounts. (Defs.' Mot. Summ. J., Dkt. 72, at 18). Defendants argue that MVBA PC only works on non-consumer accounts that are not subject to the FDCPA. (*Id.*).

Perez argues that both companies are in the business of debt collections, "albeit different types of debt," and that both companies use the same office space and employees and transfer profits between them. (Resp., Dkt. 79, at 19). However, each company working on different aspects of debt collection and coordinating operations in shared office space is insufficient to demonstrate that there was an agreement to jointly carry out a common purpose. *See, e.g., In re Parkcentral Glob. Litig.*, No. 3:09-CV-0765-M, 2010 WL 3119403, at *9 (N.D. Tex. Aug. 5, 2010) ("The mere coordination of operations and combination of resources in pursuit of the same business purpose is

insufficient to impose joint enterprise liability."); *SSP Partners v. Gladstrong Invs. Corp.*, 275 S.W.3d 444, 451–52 (Tex. 2008) (noting that common employees, common offices, centralized accounting, and services rendered by the employees of one corporation on behalf of another corporation are insufficient to establish joint enterprise liability). The Court grants summary judgment to Defendants as to whether MVBA PC is liable under a joint enterprise theory.

c. Vicarious Liability

Finally, Perez argues that MVBA PC should be vicariously liable for MVBA LLC's actions. Under Texas law, "agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal, subject to the principal's control." *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1296 (5th Cir. 1994). The party asserting the existence of an agency relationship bears the burden of proof, and the agency relationship must be shown affirmatively. *Id.* "To prove an agency relation[ship] under Texas law, there must be evidence from which the court could conclude that '[t]he alleged principal [had] the right to control both the means and the details of the process by which the alleged agent [was] to accomplish the task.'" *Id.* (quoting *In re Carolin Paxson Adver., Inc.*, 938 F.2d 595, 598 (5th Cir. 1991). For vicarious liability to apply to an FDCPA claim, both entities must be "debt collectors" as defined by the statute. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000); *see also Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994); *Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 668 (N.D. Tex. 2010).

Although Defendants maintain that MVBA PC is not a debt collector under the FDCPA, Perez argues that there is a factual dispute as to whether it can be considered a debt collector because "MVBA" was listed on the letter. However, the Court is unpersuaded that a reasonable jury could find that the abbreviation "MVBA" on the letter was not an abbreviated reference to MVBA LLC, which was listed elsewhere on the letter, and was instead a reference to MVBA PC—which

was not mentioned in the letter. Perez also argues that "MVBA, P.C. specifically approves/ratifies

the engagement contracts with MVBA, LLC and the respective creditors." (Resp., Dkt. 79, at 20)

(citing Harvey Depo., Dkt. 79-7, at 26:25-27:5) (Harvey stating that sometimes he, in his role as

president of MVBA PC, signs contracts on behalf of MVBA LC with creditors to perform FDCPA

work). However, Perez contradicts this assertion by conceding in her response that the two

corporations collect "different types of debt." (Resp., Dkt. 79, at 19). Because Perez does not

present evidence that indicates that MVBA PC is a debt collector under the FDCPA, Perez cannot

hold MVBA PC vicariously liable. Accordingly, the Court grants summary judgment to Defendants

as to Perez's claims against MVBA PC.

### 3. FDCPA

The Court next turns to the merits of the FDCPA claims against MVBA LLC. "The FDCPA

was passed to protect consumers from deceptive or harassing actions taken by debt collectors."

*Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002); *see also McMurray v. ProCollect, Inc.*, 687 F.3d 665,

668 (5th Cir. 2012). "When determining compliance with the FDCPA, the Fifth Circuit has held that

a court must evaluate any potential deception in a collection letter under an unsophisticated or least

sophisticated consumer standard." *Schnorrbusch v. Commercial Trade, Inc.*, No. 3:18-CV-1850- G, 2018

WL 6436418, at *3 (N.D. Tex. Dec. 7, 2018) (internal quotations and alterations omitted). "The least

sophisticated consumer has rudimentary knowledge about the financial world and is capable of

making basic logical deductions and inferences." *Id.* (internal quotations omitted). Application of the

unsophisticated consumer test is objective, meaning that it is unimportant whether the individual

who actually received an allegedly violative letter was misled or deceived. *See Taylor v. Perrin, Landry,

deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997); *Gonzalez v. Kay*, 577 F.3d 600, 609–11 (5th

Cir. 2009) (Jolly, J., dissenting). The Fifth Circuit generally treats the unsophisticated-consumer

standard as a question of law, not fact. *Manuel v. Merchants & Pro. Bureau, Inc.*, 956 F.3d 822, 826 (5th Cir. 2020).

a.   Statute of Limitations

Perez alleges that Defendants violated §§ 1692(e)(2)(A) and 1692e(10) by failing to disclose that the debt was time-barred and that a partial payment could restart the statute of limitations. (2d. Am. Compl., Dkt. 67, at 10–11). Section 1692(e)(2)(A) prohibits the false representation of the character, amount, or legal status of a debt in connection with the collection of the debt. 15 U.S.C. § 1692(e)(2)(A). Section 1692(e)(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692(e)(10).

"Under Texas law, the statute of limitations on a time-barred debt, such as this one, is revived only if there is a writing containing an unequivocal acknowledgement of the justness of the claim and an expression of a willingness to pay." *Gonzales v. Portfolio Recovery Assocs.*, LLC, No. 4:19-cv-218-A, 2019 WL 2772524 at *2 (N.D. Tex. July 2, 2019); Tex. Civ. Prac. & Rem. Code § 16.065).

Defendants argue that because the letter did not threaten to sue or take legal action against Perez, it would not have led an unsophisticated consumer to believe that legal action could be taken against her. (Defs.' Mot. Summ. J., Dkt. 72, at 11–12) (citing *Christie v. Cont. Callers, Inc.*, No. 4:20-CV-00518-P, 2021 WL 689548, at *5 (N.D. Tex. Feb. 23, 2021); (*see* Letter, Dkt. 67-1). However, the Fifth Circuit has explained that it "cannot conclude . . . that settlement offers and litigation threats are the only ways debt collectors can mislead unsophisticated consumers regarding old debt," since

the FDCPA should be broadly construed. *Manuel v. Merchants & Pro. Bureau, Inc.*, 956 F.3d 822, 830 (5th Cir. 2020).

Defendants further argue that the letter asked for full payment, which would not have restarted the statute of limitations, unlike a partial payment. (Defs.' Mot. Summ. J., Dkt. 72, at 11); (Letter, Dkt. 67-1 ("Payment in full of that amount is required.")). Perez, on the other hand, argues that the letter created a false sense of urgency by stating that payment was "required." (Resp., Dkt. 79, at 10). Perez relies on *Manuel v. Merchs. and Pro. Bureau, Inc.*, 956 F.3d 822 (5th Cir. 2020) for the contention that absent a time barred debt disclosure, a consumer may be induced to pay a portion of the debt they otherwise would not have paid, including sending a partial payment. (Pl.'s Resp., Dkt. 79, at 9). Indeed, the Fifth Circuit in *Manuel* observed that a "debtor confronted with an 'urgent' letter seeking full payment might also think it advisable to pay some of it." 956 F.3d at 832.

Defendants argue that stating payment is "required" does not convey a sense of urgency like the letter at issue in *Manuel*. (Defs.' Reply, Dkt. 81, at 5). Although *Manuel* does not state that statute-of-limitations warnings are always required, its reasoning suggests that, in this case, the letter's indication that payment was "required" would have "reinforced the misleading impression that the debt was legally enforceable" to an unsophisticated consumer. *See Manuel*, 956 F.3d at 827, 830. If unsophisticated consumers "believe that the debt is legally enforceable at all, they have been misled." *Id.* at 828 (quoting *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1022 (7th Cir. 2014)). As in the Seventh Circuit's *McMahon*, the letter here did not "give a hint that the debts were time barred." *Id.* at 830 (quoting *McMahon*, 744 F.3d at 1020) (cleaned up). Further, the Fifth Circuit has emphasized that it has not "purport[ed] to catalogue all the ways collection of time-barred debt can be misleading," and that the FDCPA should "be construed broadly and in favor of the consumer." *Manuel*, 956 F.3d at 830. Accordingly, the Court denies Defendants' motion for summary judgment

as to whether the letter's failure to disclose that the debt was judicially unenforceable violated the FDCPA.

### b. Materiality

Defendants next argue that even if the letter did include a misrepresentation, it was not material as it would not affect a consumer's decision making. (Defs.' Mot. Summ. J., Dkt. 72, at 12–13). A false, deceptive, or misleading statement is "material" when it has "the ability to influence a consumer's decision." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011). Other circuits have characterized the materiality standard as implicit in the least or unsophisticated debtor standard. *E.g., Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) ("[T]he materiality requirement is simply another way of phrasing the legal standard we already employ when analyzing claims under § 1692(e), so that the same analysis can be applied to communications containing false statements."). As discussed above, the Fifth Circuit's language in *Manuel* suggests that the letter's language seeking payment in full might have influenced a consumer's actions because a "debtor confronted with an 'urgent' letter seeking full payment might also think it advisable to pay some of it." 956 F.3d at 832. Defendants' argument that the letter' misrepresentation was immaterial does not support summary judgment.

### c. § 1692(f)

Defendants next move for summary judgment on Perez's § 1692(f) claim because it "asserts no new allegations for the basis of her claim." (Defs.' Mot. Summ. J., Dkt. 72, at 13). Section 1692(f) of the FDCPA prohibits a debt collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692(f). It functions as a "backstop" to catch any violations that might slip through the cracks or otherwise not fall under other provisions. *Osborn v. Ekpsz,*

*LLC*, 821 F. Supp. 2d 859, 878 (S.D. Tex. 2011); *see Fath v. BAC Home Loans*, No. 3:12-CV-1755-O, 2013 WL 3203092, at *13 (N.D. Tex. June 25, 2013).

Defendants argue that there is a "growing consensus, at least among district courts, that a claim under § 1692(f) must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA." (Defs.' Mot. Summ. J., Dkt. 72, at 13) (quoting *Osborn*, 821 F. Supp. 2d at 878). Defendants argue that Perez's claims for § 1692(f) and 1692(e) both allege that the letter failed to disclose the debt was time barred, falsely stated that a full payment was required, and failed to warn plaintiff that a partial payment could reinstate the statute of limitations. (*Id.* at 14).

Perez concedes the similarity of the claims, and argues that she only brings a claim under § 1692(f) in the alternative and to the extent there is no finding as to liability under § 1692(e). (Pl.'s Resp., Dkt. 79, at 12). Because Perez's § 1692(f) claim is based on the same allegations as her § 1692(e) claim, the Court grants summary judgment to Defendants on Perez's § 1692(f) claim. *See Osborn*, 821 F. Supp. 2d at 878.

### d. Bona Fide Error Defense

Defendants finally argue that they are not liable because sending Perez the letter was a bona fide error. A defendant claiming a bona fide error defense must show that the violation was: (1) unintentional; (2) resulting from a bona fide error; and (3) made despite maintenance of procedures reasonably adapted to avoid that error. 15 U.S.C. § 1692k(c); *Guerrero v. Credit Mgmt., LP*, No. A-16-CV-987-LY, 2017 WL 7052292, at *4 (W.D. Tex. Oct. 24, 2017), *report and recommendation adopted*, No. A-16-CV-987-LY, 2017 WL 7052319 (W.D. Tex. Dec. 19, 2017) (citing *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006)). The debt collector only has to show that its violation of the statute was unintentional, not that its actions were unintentional. *See Cole v. Procollect, Inc.*, No. H-09-3240, 2010 U.S. Dist. LEXIS 142667, at *24 (S.D. Tex. 2010). The intent prong of the bona fide error

defense is a subjective test, while the procedures prongs are objective tests. *Johnson*, 443 F.3d at 727–28. To determine where there were reasonably adapted procedures, a court must consider (1) whether the debt collector "'maintained'—i.e., actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Id.* at 729.

Defendants argue that MVBA LLC had procedures in place to avoid this type of error, by placing accounts on hold where the debt was greater than four years old. (Defs.' Mot. Summ. J., Dkt. 72, at 16) (citing Whigham Depo., Dkt. 72-6, at 27:17-23; Whigham Decl., Dkt. 72-1, at ¶ 3, 8). Perez argues that there is no evidence that MVBA LLC relied on incorrect information from a creditor or made a clerical error in the computation of the statute of limitations. (Pl.'s Resp., Dkt. 79, at 14). Instead, Perez argues that MVBA LLC's procedures were fundamentally flawed because they did not include an "appropriate buffer of time" to prevent sending letters that became time barred after they were prepared by MVBA LLC. (*Id.*). Perez also states that because MVBA LLC admits to sending fifty-five similar letters that were time barred within a year period, its "procedures appear to have been designed to create the FDCPA violation rather than to prevent it." (Pl.'s Resp., Dkt. 79, at 14; Defs.' Interrogatories, Dkt. 71-6, at 8).

Defendants respond that Perez's account was supposed to be on hold and that the letter was "accidentally sent the day after," and the "issue was not foreseen by MVBA LLC which had been operating under this procedure and never received another complaint, let alone another lawsuit, regarding a delinquent debt." (Defs.' Reply, Dkt. 81, at 7–8). However, Defendants' attempt to paint this mistake as a one-time fluke is unpersuasive in light of the fifty-five other times that it admits to a similar mistake occurring with a one-year period. (Defs.' Interrogatories, Dkt. 71-6, at 8). This repeated error from Defendants' procedures creates an outstanding fact issue as to whether MVBA

LLC had reasonably adapted procedures to avoid this error. Summary judgment is denied as to the

bona fide error defense. The Court now turns to Perez's motion for summary judgment.

### B.  Perez's Partial Motion for Summary Judgment

Because the Court has already granted Defendants' motion for summary judgment as to

Perez's claims against MVBA PC, the Court does not address arguments regarding MVBA PC in the

briefing on Perez's motion for summary judgment. *See supra* Section III(A)(2). Similarly, because the

Court granted Defendants' motion for summary judgment as to Perez's §1692(f) claim, the Court

does not address that claim here. *See supra* Section III(A)(3)(c). Finally, the Court denies Defendants'

arguments regarding Perez's standing for the same reasons as already discussed. *See supra* Section

III(A)(1).

### a. §1692(e)

Section 1692(e)(2)(A) prohibits the false representation of the character, amount, or legal

status of a debt in connection with the collection of the debt. The parties once again disagree as to

the impact of Perez's debt being time barred when the letter was sent without a disclosure that the

debt was legally unenforceable. Because the parties reiterate the arguments made in their briefing on

Defendants' motion for summary judgment, the Court also reiterates that the letter sent to Perez

was misleading under Fifth Circuit precedent in *Manuel v. Merchants & Pro. Bureau, Inc.*, 956 F.3d 822,

830 (5th Cir. 2020); (*see* Defs.' Resp., Dkt. 73, at 5–10; Pl.'s Reply, Dkt. 82, at 4–6). *Manuel* leads this

Court to the understanding that the letter's indication that payment was "required," without an

indication that it was time barred, would have "reinforced the misleading impression that the debt

was legally enforceable" to an unsophisticated consumer. *See Manuel*, 956 F.3d at 827, 830. If

unsophisticated consumers "believe that the debt is legally enforceable at all, they have been misled."

*Id.* at 828 (quoting *McMahon*, 744 F.3d at 1022). Because the Fifth Circuit generally treats the

unsophisticated-consumer standard as a question of law, the Court holds that the letter sent to Perez

was false and misleading. *Id.* at 826 ("While we have not formally picked sides in the circuit debate over whether application of the unsophisticated-consumer standard is a question of law or fact, we generally treat the issue as a question of law." (cleaned up)); *Id.* at 830 (stating that the FDCPA should "be construed broadly and in favor of the consumer"). Because Defendants plead a bona fide error defense to this claim, as discussed below, the Court refrains from granting summary judgment on this claim.

### b. Bona Fide Error Defense

Once again, a defendant seeking a bona fide error defense must show that the violation was: (1) unintentional; (2) resulting from a bona fide error; and (3) made despite maintenance of procedures reasonably adapted to avoid that error. 15 U.S.C. § 1692k(c); *Guerrero*, 2017 WL 7052292, at *4 (citing *Johnson*, 443 F.3d at 727–28). To determine whether there were reasonably adapted procedures, a court must consider (1) whether the debt collector "'maintained'—i.e., actually employed or implemented—procedures to avoid errors; and, [(2)], whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *See Johnson*, 443 F.3d at 729. "[Section] 1692k(c)'s requirement that debt collectors maintain procedures reasonably adapted to avoid any bona fide errors referred only to measures designed 'to avoid errors like clerical or factual mistakes.'" *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1611, 1615 (2010)).

The parties dispute whether MVBA LLC's procedures were reasonably adapted to avoid errors. Defendants argue that it used a program to put accounts on hold that were delinquent for more than four years. (Defs.' Resp., Dkt. 80, at 10 (citing Dkt. 72-6 at 9:12-23, 10:7-14.)). MVBA LLC maintains that the error that occurred in this case "was not foreseen." (*Id.* at 11) (citing Dkt. 72-6, at 12:2-15); *see also Yohannes v. Olympic Collection Inc.*, No. 2:17-CV-509-RSL, 2019 WL 5103777, at *11 (W.D. Wash. Oct. 11, 2019) (procedures that had operated without error for a considerable

time and had not resulted in an error before this case were reasonably adapted). Whereas Perez

argues that fifty-five similarly mistaken letters were sent out in the year before this lawsuit, and

"[t]here is no way to know how many other consumers beyond the scope of this lawsuit received

time barred notices for claims at or near the expiration of the four-year limitations window." (Pl.'s

Reply, Dkt. 82, at 7–8). The parties' different accounts of MVBA LLC's procedures present a factual

dispute that precludes summary judgment on MVBA LLC's bona fide error defense.

### C. Motion to Certify Class

Pursuant to Federal Rule of Civil Procedure 23, Perez moves to a certify the following class:

1. Class consisting of (i) all persons at a Texas address (ii) to whom Defendants sent a letter in the form of Exhibit A (iii) which were not returned as undeliverable (iv) in an attempt to collect a debt incurred for personal, family, or household purposes as shown by Defendants' or the creditors' records (v) which includes a "Delinquency Date" of more than four years prior to the date of the respective letter in the form of Exhibit A (vi) during the one year prior to the filing of this lawsuit.

(Mot. Cert., Dkt. 71, at 1–2). Perez believes that the size of the class is fifty-five individuals who

were also sent similar letters. (*Id.* at 2) (citing Defs.' Interrogatories, Dkt. 71-6, at 8).

The party seeking class certification has the burden of proof. *Funeral Consumers All., Inc. v.*

*Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012). "The court has wide discretion in determining

whether to certify a class, but that discretion must be exercised within the bounds of Rule 23." *In re*

*Enron Corp. Sec.*, 529 F. Supp. 2d 644, 670 (S.D. Tex. 2006). For a class to be certified, all four

requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b).

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

Under Rule 23(a) the moving party must demonstrate that: (1) the class is so numerous that

joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common

to the class (commonality); (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately

protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a); *see Amchem Products*, 521 U.S. at 613. Defendants challenge each of these requirements.

### a. Numerosity

Defendants first argue that fifty-five individuals are too small to satisfy the numerosity requirement. (Defs.' Resp., Dkt. 77, at 4) (citing *Crawford v. W. Elec. Co., Inc.*, 614 F.2d 1300, 1305 (5th Cir. 1980) (joinder of 34 proposed class members was not impracticable)). Whereas Perez responds that other courts have often concluded that "the numerosity requirement is usually satisfied where the class comprises 40 or more members." (Pl.'s Reply, Dkt. 78, at 2) (citing *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807, *2 (N.D. Cal. July 17, 2013) (citing cases)). Perez further argues that it would "be impractical to join the fifty-five (55) members. . . . in 55 separate claims rather than one time in a class action." (Pl.'s Reply, Dkt. 78, at 2).

Although "the number of members in a proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has previously cited caselaw suggesting that any class consisting of more than forty members should raise a presumption that joinder is impracticable. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). The Court finds that under the circumstances in this case, fifty-five individuals are sufficiently numerous, and it would be otherwise impracticable to litigate each class members' claims separately.

### b. Commonality and Typicality

Defendants next argue that there is not commonality among the proposed class because it is uncertain whether each of the class members would have standing to bring a lawsuit, reiterating their arguments regarding Perez's standing. (Resp., Dkt. 77, at 6); *see supra* Section III(A)(1). Because Perez's proposed notice applies to individuals who were mailed letters with the same alleged FDCPA violations as Perez's letter, it is likely that the proposed class members who received the letter would have standing for the same reasons that Perez does. *See supra* Section III(A)(1).

Although Defendants argue that determining whether each individual has standing would not only "generate individual questions, but also individual answers," the class members, like Perez, likely have standing, which could be easily determined. (*See* Defs.' Resp., Dkt. 77, at 5, 7). The Court is unpersuaded that any questions pertaining to standing interfere with commonality among the potential class members. Because Defendants' challenge to the typicality requirement of class certification also revolves around Perez "fac[ing] different arguments and defenses due to the standing question in her case," the Court similarly rejects those arguments. (*Id.* at 9).

c. Adequacy

Adequacy "encompasses class representatives, their counsel, and the relationship between the two." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (internal quote omitted). Courts consider (1) the zeal and competence of the representative's counsel and (2) the willingness and ability of the representative "to take an active role in and control the litigation and to protect the interests of absentees." *Id.*

Defendants argues that Perez is not an adequate representative for the class members, once again because they contend Perez has unique arguments regarding standing and the liability of MBVA PC in her case; however, these issues have already been resolved and do not interfere with Perez's adequacy as a class representative. (*See* Defs.' Resp., Dkt. 77, at 9–11); *supra* Section III(A)(1); Section III(A)(2).

Defendants additionally argue that Perez lacks knowledge about the legal basis of her claims. (*Id.* at 10–11). However, Perez provides a sworn declaration in which she attests that she understands the legal parameters of her case and her responsibilities as the class representative as explained to her by her counsel. (Perez Decl., Dkt. 71-3). As such, Perez has demonstrated competence and willingness to serve as a class representative.

d. 23(b)

In addition to meeting the requirements under Rule 23(a), a plaintiff must also satisfy Rule 23(b). Fed. R. Civ. P. 23(b); *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017). In this case, Perez seeks certification under Rule 23(b)(3), which requires her to demonstrate that "the questions of law or fact common to the class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

There are common questions of law and fact in this case because each class member was sent a letter that failed to state that the debt was time barred and that any partial repayment could reinstate that statute of limitations. Thus, the same allegations of FDCPA violations apply to each class member.

Rule 23(b)(3) also requires a court to find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under this Rule, "matters pertinent to these findings" are (a) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (b) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (c) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (d) "the likely difficulties in managing a class action." *Id.* The Fifth Circuit has observed that "this list is not meant to be exhaustive and the court has discretion to consider whatever other factors it deems relevant to the determination." *In re TWL Corp.*, 712 F.3d 886, 895–96 (5th Cir. 2013). Superiority is "necessarily . . . a comparative process" of evaluating whether the class mechanism is

preferable to individual litigation by class members. *Id.* at 896. "The procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 749 n.27 (5th Cir. 1996) (citation and quotation marks omitted).

Perez argues that a class action would be more efficient than other forms of litigation, particularly because this is a negative value suit, in that the "stakes to each member are too slight to repay the cost of the suit." (Dkt. 71-2, at 16) (quoting *In re Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir.1995)). The Fifth Circuit has observed that negative value suits are the "most compelling rationale for finding superiority in a class action." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998).

Defendant once again focuses on the issue of standing in this case, arguing that an individualized inquiry would be required to determine if each class member has standing. (Defs.' Resp., Dkt. 77, at 11–13). The court reiterates that standing is unlikely to require more than a cursory inquiry of each class member, which would be feasible in a class action. Because each potential class member received a similar letter with the same alleged FDCPA violations, a class action is proper in this case.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 72), is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** Defendants summary judgment as to Perez's claims against MVBA PC and Perez's claim based on § 1692(f). The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Perez's Motion for Summary Judgment, (Dkt. 73), is **DENIED**.

**IT IS FURTHER ORDERED** that Perez's Motion to Certify Class, (Dkt. 71), is **GRANTED**.

**IT IS FINALLY ORDERED** that the parties shall confer about the proposed schedule for issuing class notice and receiving response. The parties shall submit a joint proposed class notice and schedule on or before **August 30, 2021**.

**SIGNED** on August 17, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

24